CUAUHTEMOC ORTEGA (SBN 257443)
Federal Public Defender
(E-mail: Cuauhtemoc_Ortega@fd.org)
ANDREW BYRD (SBN 337584)
(E-mail: Andrew_Byrd@fd.org)
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
GREGORY JOHNSON

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY JOHNSON,<br><br>　　　　Defendant. | Case No. 2:21-cr-00025-VAP<br><br>**GREGORY JOHNSON'S SENTENCING MEMORANDUM; EXHIBIT** |

## I. INTRODUCTION

Forty three year old Gregory Johnson is before the Court for sentencing after pleading guilty to robbery, in violation of 18 U.S.C. § 1951(a), and possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Mr. Johnson entered his plea pursuant to a written agreement in which the parties stipulated to a base offense level of 33 under the United States Sentencing Guidelines before a 3-level reduction for acceptance of responsibility. In its Presentence Investigation Report

("PSR"), the United States Probation Office ("USPO") determined the total offense level to be 30. PSR ¶ 249. The PSR also places Mr. Johnson in Criminal History Category IV based upon a criminal history score of 19. PSR ¶ 272. An offense level of 30 and a CHC of IV results in a recommended Guidelines range of 168-210 months in custody. As Count 20 mandates a consecutive 84-month term of imprisonment, the resultant guidelines range is 252 to 294 months in custody.

In its Sentencing Recommendation Letter ("SRL"), the USPO recommends a sentence of 273 months in custody followed by 3 years of supervised release. SRL, page 2.

While the underlying conduct of the plea represents dangerous and serious lapses in judgment, the history and characteristics of Mr. Johnson's life are replete with poverty, neglect, and despair. Raised in South Central Los Angeles at the height of the crack-cocaine epidemic, Mr. Johnson witnessed events and endured circumstances no child should endure. Now, as Mr. Johnson finally begins to grapple with and process events he's spent decades avoiding, he respectfully requests the Court allow him to have another opportunity to live life outside of prison walls by imposing a sentence of 180 months of custody followed by five years of supervised release.

## II. SENTENCING GUIDELINE CALCULATIONS

Mr. Johnson has no objections to the calculation of the Criminal History Category as IV or of his criminal history points as 19.

Mr. Johnson further concurs with the USPO that the offense level following a reduction for acceptance of responsibility is 30. He agrees that the guideline range applicable to his case is 168 months to 210 months on count 19, with a consecutive sentence of 7 years on count 20, which yields a total guideline range of 252 to 294 months in custody.

## III. APPROPRIATE SENTENCE

**A.  18 U.S.C. § 3553(a) Is The Standard of Review**

"[S]entencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." U.S. v. Harris, 679 F.3d 1179, 1183 (9th Cir. 2012). The Supreme Court has consistently held that federal judges should impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, consider all of the characteristics of the offender and circumstances of the offense, reject advisory guidelines that are not based on national sentencing data and empirical research, and serve their function in the constructive evolution of responsible guidelines. See U.S. v. Booker, 543 U.S. 220 (2005); Rita v. U.S., 127 S. Ct. 2456 (2007); Gall v. U.S., 128 S. Ct. 586 (2007); Kimbrough v. U.S., 128 S. Ct. 558 (2007); Spears v. U.S., 129 S. Ct. 840 (2009); Nelson v. U.S., 129 S. Ct. 890 (2009).

The applicable sentencing statutes provide that a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to achieve the objectives of sentencing. See 18 U.S.C. §§ 3553(a), 3582(a), and 3661. In arriving at the appropriate sentence, § 3553(a) directs sentencing courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender; (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (4) to afford adequate deterrence; (5) to protect the public from further crimes; (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment; and (7) the kinds of sentences that are available. 18 U.S.C. § 3553(a)(1), (2). When these factors are fully considered, a sentence of 12 months and one day is sufficient but not greater than necessary.

B. **Relevant Section 3553 Factors in this Case**

   1. **Mr. Johnson's History and Characteristics**

      a. **Mr. Johnson grew up poor in South Central Los Angeles during the crack-cocaine epidemic.**

Mr. Johnson was borne out of wedlock to 19 year old Mildred Johnson and Johnny Morales in 1977. One of 5 siblings, Mr. Johnson's only recollection of his father is watching him leave the family's home when he was 4 years old. The absence of Mr. Johnson's father left his mother as the sole provider for the family. Though his mother worked full-time as a cashier at See's Candy, her wages were not enough to support Mr. Johnson and his siblings. To make ends meet, she took on second and third jobs over the years. As a result, Mr. Johnson and his siblings were without supervision for much of their childhood. Exhibit A, Social History of Gregory Johnson.

Little did Mr. Johnson know, but macro-socioeconomic forces outside of his control had set the stage for his childhood out on the streets. The manufacturing jobs that relied on unskilled and semi-skilled labor and attracted many African-Americans to large cities dried up as manufacturing moved overseas during the late 1960's. E Dunlap & BD Johnson, *The Setting For The Crack Era: Macro Forces, Micro Consequences (1960-1992)*, Journal of Psychoactive Drugs, Vol. 24(4): 307-321 (1992). Compounding the loss of good-paying jobs was the curtailment of anti-poverty programs as public attention shifted to the Vietnam War and civil disorder over the slow pace of racial and economic justice. *Ibid*. That Mr. Johnson lived in poverty as a child was in line with the black experience writ large – in 1986, there was a 90% chance that a black child would experience poverty if they lived in a family headed by a single woman under the age of 30. Jewelle Taylor Gibbs, Young, Black, And Male in America, 25 (1988).

Mr. Johnson attended 95th Street Elementary School but struggled with schoolwork and discipline. Simply put, Mr. Johnson didn't have the support system necessary to help him with homework and oversee his education. While Mr. Johnson

developed a relationship with one teacher in particular, Mrs. Brooks, it wasn't enough to keep him from skipping elementary school several times per week. Instead, Mr. Johnson found himself seeking support and companionship from boys in his neighborhood. Ex. A.

In the early 1980's, illicit drugs, specifically crack-cocaine, filled the economic void left by South Central's rising unemployment and deteriorating social conditions. Rich Connell, The Hidden Devastation of Crack, L.A. Times, Dec. 18, 1994, at A1. It was at this time that Mr. Johnson, at the age of 8 years old, was jumped into a local neighborhood gang. Consequently, Mr. Johnson witnessed countless acts of violence, substance abuse, and death – all as a prepubescent child. These experiences had profound effects on Mr. Johnson's behavior, self-esteem, and physical and mental health. Ex. A

In fact, numerous studies demonstrate the link between childhood trauma and poor social health outcomes such as delinquency, substance abuse, mental health issues such as depression and post-traumatic stress disorder, and violence. E.g., Laurie S. Miller, *Witnessed Community Violence and Antisocial Behavior in High-Risk, Urban Boys*, Journal of Clinical Child Psychology, Vol. 1: 2-11 (2010); GB Distiller, *Factors Affecting Resilience In Children Exposed To Violence*, South African Journal of Psychology, Vol. 37, No. 1 (2007); Elizabeth S Barnert, *Juvenile Incarceration and Health*, Acad. Pediatrics, Vol. 16, 2: 99-109 (2016).

Tragically, at just 10 years old, Mr. Johnson smoked marijuana for the first time. At 16 years old, he dropped out of school and suffered his first arrest. And at 17 years old, he suffered his first seizure – a chronic condition that has haunted and hospitalized Mr. Johnson on several occasions throughout his life. Ex. A

Mr. Johnson eventually left the local neighborhood gang in 2000 but still suffered various arrests and convictions afterwards. Similarly, one of Mr. Johnson's brothers suffered a drug conviction while another brother, Marlon, whom Mr. Johnson was particularly close with, succumbed to chronic depression and committed suicide in

2008. Marlon's suicide affected Mr. Johnson deeply and he is just now coming to terms with Marlon's loss. Ex. A.

In short, Mr. Johnson's conduct in this matter is the culmination of a lifetime of trauma, pain, and undue hardship. At 44 years old, Mr. Johnson understands this sentencing represents his final opportunity for a meaningful life.

### 2. Just Punishment, Deterrence, Public Protection, and Recidivism

The considerations of just punishment, deterrence, public protection, and respect for the law will be advanced by Mr. Johnson's proposed sentence. Removing Mr. Johnson from society for 15 years will likely afford protection to the public for the rest of Mr. Johnson's life because sexagenarians, relative to other age groups, tend not to commit crimes. Robert J. Sampson, *Life Course Desisters? Trajectories of Crime Among Delinquent Boys Followed to Age 70*, Criminology, Vol. 41, 3: 555-592 (2003.) In fact, a 2017 report by the United States Sentencing Commission found that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (2017). Moreover, the lower rates of recidivism by sexagenarians applied across numerous axes, including type of crime, criminal history category, length of sentence, and base offense level. *Ibid*.

Regarding deterrence, while it has been demonstrated that the certainty of getting caught can produce a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Justice 1, 28-29 (2006); see also Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Generally, few criminals are aware of the specific penalties for crimes and fewer still believe they will be apprehended and convicted. *See* Tonry, *Purposes and Functions of*

*Sentencing*, *supra*, at 28-29. In other words, the idea that longer sentences produce greater amounts of deterrence is simply not supported by evidence. M.J.G Bun *et al.*, *Crime, Deterrence and Punishment Revisited*, Empirical Economics 59, 2302-2333 (2020).

Conversely, mental health treatment in a structured setting is likely to prevent Mr. Johnson from reoffending as "cognitive skills programs . . . and various educational and vocational skills programs" have been shown to reduce a defendant's probability of reoffending. Tonry, *Purposes and Functions of Sentencing*, *supra*, at 33. Considering the numerous challenges Mr. Johnson has endured throughout his life, a spark of hope may be the most effective deterrent of all.

## IV. CONCLUSION

The defense respectfully requests that the Court impose a sentence of 180 months of custody followed by five years of supervised release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 22, 2021     By  */s/ Andrew Byrd*
ANDREW BYRD
Deputy Federal Public Defender

# PROOF OF SERVICE

I, **DELFINA ARELLANO**, declare that I am a resident or employed in Riverside County, California; that my business address is the Office of the Federal Public Defender, 3801 University Avenue, Suite 700, Riverside, California 92501, (951) 276-6346; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **GREGORY JOHNSON'S SENTENCING MEMORANDUM; EXHIBIT** on the following individual(s) by:

| [ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [x] via E-Mail addressed as follows: |

**KIM CASSULO, USPO**
[Kim_Cassulo@cacp.uscourts.gov]

This proof of service is executed at Riverside, California, on **November 22, 2021.**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                                */s/ Delfina Arellano* .
                                **DELFINA ARELLANO**